**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MID-ATLANTIC INNOCENCE PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>*et al.*,<br><br>Defendants. | Civil Action No. 23-cv-2112 (BAH)<br><br>Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

On December 13, 1994, a D.C. Superior Court jury convicted Kenneth G. Copeland for the November 28, 1992, first-degree premeditated murder of Wayne Edelin and for possessing a firearm during a crime of violence. *See* Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Opp'n"), Ex. 9, Trial (Dec. 13, 1994) Tr. at 765:8-18, ECF No. 27-4. More than three decades later, plaintiff, the Mid-Atlantic Innocence Project, believes Copeland to have been innocent of both offenses and, in pursuit of this theory, has requested, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, records related to Copeland's case held by defendant Federal Bureau of Investigation, a component of defendant Department of Justice. In response to plaintiff's FOIA request, defendants released a total of 173 pages in full and 609 pages in part with redactions, and withheld 441 pages in full. Remaining at issue are 260 pages released in part, with redactions, and 6 pages withheld in full by the FBI in reliance on multiple exemptions under the Privacy Act and FOIA.

The parties have cross-moved for summary judgment, though plaintiff suggests that, in the alternative to summary judgment, "an *in camera* review appears to be the best (and only) method" to resolve this dispute. Pl.'s Reply in Supp. of Its Mot. for Summ. J. ("Pl.'s Reply") at 12, ECF

1

No. 39; *see* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 24; Pl.'s Opp'n.  For the reasons set out below, defendants' motion for summary judgment is granted in part and denied in part, plaintiff's cross-motion for summary judgment, as well as plaintiff's request for *in camera* review, are denied, and the parties are directed to submit a proposed schedule for the expeditious resolution of the remaining issues in this matter.

## I.      BACKGROUND

The factual background and procedural history relevant to the pending motion are described below.

### A.      Factual Background

In 1994, Kenneth G. Copeland was charged in D.C. Superior Court for the first-degree murder of Wayne Edelin and possession of a firearm during a crime of violence.  Pl.'s Opp'n, Ex. 2, Decl. of Mid-Atlantic Innocence Project Staff Att'y, Margaret Abernethy ("Abernethy Decl.") ¶ 7, ECF No. 27-2.  During the trial, in December 1994, a dozen witnesses for the prosecution and one witness for the defense testified over the course of three-and-a-half days.  *Id.*, Ex. 5, Trial (Dec. 6, 1994) Tr. at 2-4, ECF No. 27-2.  The prosecution at closing provided summation of the testimony most critical to its case, observing that "there's no dispute really that—is there, that Wayne Edelin was, in fact, killed on November 28th, 1992, that he was shot in the head, back of the neck, in the chest and that he died from multiple gunshot wounds," and instead, the "one issue" was: "Did this man kill Wayne Edelin?"  *Id.*, Ex. 8, Trial (Dec. 12, 1994) Tr. at 654:13- 655:17, ECF No. 27-4.  According to the prosecutor, "the core testimony of the case," *id.* at 660:14-15, came from Edwin Robinson, who was nine when the murder occurred and eleven at the time of trial.  The prosecutor reminded jurors that Edwin "identified [the defendant] in court on Tuesday

as the man he saw shoot and kill Wayne Edelin" and had "identified [the defendant] back in April of 1994 when he was shown the photo spread." *Id.* at 656:5-10.[1]

The prosecution emphasized that "the entire case is not Edwin Robinson," however, and highlighted "other evidence and testimony independently that confirms and points the finger at . . . Kenneth Copeland." *Id.* at 663:8-16. For instance, Emily Robinson, Edwin's grandmother, testified that "she had sent Edwin to the store by himself" and that when he returned, "he was scared and frightened." *Id.* at 663:24-664:2. Edwin told her that "Kenneth shot Wayne" and had done so "within one minute of the shooting itself." *Id.* at 664:7-665:2. Additionally, at trial, "Edwin describe[d] the make and model and color of the car or vehicle that he saw the defendant in the night of the shooting" and told the jury that "it was a lightly colored gold Nissan Pathfinder." *Id.* at 665:4-7. Another prosecution witness, Ali Galadari, testified that he had sold a "very lightly tinted goldish tinted Nissan Pathfinder" to Copeland on "August 18th of 1992, a little more than three months before the murder." *Id.* at 665:17-22. Two eyewitnesses, Mossise Coley and Roland Penney, were sitting in a car together "talking[ and] drinking beer" after a funeral when they both heard "several gunshots" and saw a "four-wheel drive vehicle" driving "80 to a hundred miles an hour" away from the location of the shooting. *Id.* at 667:6-668:3. Coley was able to identify the car as "a light colored vehicle [that] had a tire on the back." *Id.* at 668:7-8. Another witness was FBI Agent Paul Tangren, who testified that "all six nine millimeter shell casings were fired from the same gun." *Id.* at 670:13-15. Finally, the prosecution highlighted the testimony of the decedent's nephew, Gerald Edelin, who said that six months after the murder, Copeland admitted

---

[1] In his summation, defense counsel argued that Edwin's view was obstructed to the point that "Edwin sa[id] he didn't know who was shot until some young lady comes out yelling, 'Wayne, Wayne, Wayne,'" *Id.* at 690:7-8, and pointed out that Edwin had testified "that he wasn't with anyone when he saw [the murder], he was not with a man from the neighborhood," but "the agent and [Edwin's] own grandmother testif[ied] that he was with a man or at least said he was with a man when he was interviewed by the police," *id.* at 684:24-685:17.

to committing the murder and explained the offence as a response to hearing that Wayne Edelin "was going to try and rob me." *Id.* at 677:14-15.  After a day of deliberation, the jury convicted Copeland on both counts.

Copeland was sentenced to an aggregate of thirty-five-years to life imprisonment, *see* Min. Entry (Mar. 2, 1995), *United States v. Copeland*, No. 1994-Fel-3905 (D.C. Super. Ct.), and his convictions were affirmed on direct appeal, *see United States v. Copeland*, No. 95-CF-314 (D.C. June 11, 1998) (per curiam).[2]

## B.    Procedural Background

Almost three decades after the jury's verdict, the Mid-Atlantic Innocence Project took on Copeland's case and submitted, in December 2022, "a FOIA request to the FBI for 'all records pertaining to Kenneth G. Copeland, in the custody and control of the Federal Bureau of Investigation related to the homicide of Wayne Edelin which took place on or around November 28, 1992 near the Barry Farms neighborhood in Southeast DC.'"  Compl. ¶ 7, ECF No. 1.  The FBI acknowledged receipt of the request, "stat[ing] that the request 'falls within unusual

---

[2]    Since affirmance of his convictions on direct appeal, Copeland has filed a number of *pro se* petitions for post-conviction relief, in both local and federal courts, that have all been denied.  *See, e.g.*, *United States v. Copeland*, No. 1994-Fel-905 (D.C. Super. Ct. Aug. 29, 2003) (denying relief sought, pursuant to D.C. Code § 23-110); *United States v. Copeland*, No. 1994-Fel-905 (D.C. Super. Ct. May 5, 2004) (denying *pro se* motion for reconsideration); *United States v. Copeland*, No. 04-CO-535 (D.C. May 5, 2004) (dismissing appeals from both the denial of his § 23-110 motion and his motion for reconsideration); *Copeland v. United States*, No. 05-cv-786 (D.D.C. Apr. 19, 2005) (PLF) (denying *pro se* federal habeas petition pursuant to 28 U.S.C. § 2254); *Copeland v. United States*, No. 05-cv-786 (D.D.C. May 27, 2005) (RCL) (denying motion for reconsideration); *Copeland v. United States*, No. 05-5273, 2006 WL 1388719 (D.C. Cir. Jan. 23, 2006) (per curiam) (denying request for a certificate of appealability and petition for rehearing *en banc*); *Copeland v. United States*, No. 05-cv-786 (D.D.C. Jan. 26, 2007) (PLF) (denying *pro se* motion, pursuant to Federal Rule of Civil Procedure Rule 60(b), to vacate the decision denying his § 2254 petition), *aff'd, Copeland v. United States*, No. 07-5075, 2008 WL 5516508 (D.C. Cir. Aug. 27, 2008) (per curiam); *United States v. Copeland*, No. 1994-Fel-905 (D.C. Super. Ct. Nov. 2, 2007) (denying *pro se* petition for post-conviction relief, pursuant to D.C. Code § 23-110, claiming conflicted trial counsel for failing to disclose that firm had previously represented the decedent, Wayne Edelin, in a 1991 murder trial), *aff'd*, *United States v. Copeland*, No. 07-CO-1451 (D.C. Mar. 14, 2012) (per curiam); *United States v. Copeland*, No. 07-CO-1451 (D.C. Apr. 23, 2013) (per curiam) (denying motion to recall the mandate); *In re Kenneth G. Copeland*, No. 15-3024 (D.C. Cir. Jan. 8, 2016) (per curiam) (denying leave to file a second or successive habeas petition); Min. Entry (Feb. 18, 2020), *United States v. Copeland*, No. 1994-Fel-3905 (D.C. Super. Ct.) (denying *pro se* petition for post-conviction relief pursuant to D.C. Code § 23-110), *appeal dismissed*, Min. Entry (Oct. 7, 2020).

circumstances' pursuant to 5 U.S.C. § 552(a)(6)(B)(iii) and claim[ing] that these 'unusual circumstances' will delay its 'ability to make a determination' on the request within the statutory deadline." *Id.* ¶¶ 9, 11. Three months later, the FBI advised that 1,266 pages of documents potentially responsive to the request had been identified, *id.* ¶ 12, and subsequently indicated, in May 2023, that this request was deemed to be a "large track request," with an "average processing time . . . [of] at least 55 months," *id.* ¶ 16. The same email "invited Plaintiff to narrow the scope of their [sic] request to place it in a 'smaller, potentially faster processing track,'" but plaintiff declined to do so. *Id.* ¶¶ 16, 18.

Plaintiff initiated this lawsuit on July 20, 2023, and, at the time of filing, "the FBI ha[d] not issued a determination and ha[d] produced no records responsive to [the FOIA] request." *Id.* ¶ 20. After answering the complaint, in October 2023, *see* Answer, ECF No. 7, the parties conferred and agreed that "Defendants will process the potentially responsive records at a rate of 500 pages per month with the first release being made on November 30, 2023," with completion by January 31, 2024. Joint Status Report (Oct. 24, 2023), ECF No. 9.

After a series of interim productions, "the FBI [had] processed a total of 1,223 pages of responsive records" and "[o]f these pages, the FBI released 173 pages in full, released 609 pages in part, and withheld 441 pages in full because these pages were exempt in full pursuant to one or more applicable FOIA exceptions or the pages were found to be duplicative of other pages accounted for elsewhere in the FBI's production." Defs.' Mot., Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., Fed. Bureau of Investigations, Shannon R. Hammer ("FBI's Hammer Decl.") ¶ 4, ECF 24-1. Plaintiff subsequently "narrowed the remaining issues in this litigation to the withholding of information from 267 pages." Defs.' Mot., Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 27, ECF No. 24-3; Pl.'s Opp'n, Ex. 6, Pl.'s

Resp. to Defs.' Statement of Material Facts ("Pl.'s Resp. Defs.' SMF") ¶ 27 ("Undisputed."), ECF No. 27-6.[3]  As to the disputed 267 pages, "the FBI released 261 pages in part and withheld six pages in full."  Defs.' SMF ¶ 27; Pl.'s Resp. to Defs.' SMF ¶ 27 ("Undisputed.").

The original scheduling order issued in December 2024, set the deadline for defendants' filing of a dispositive motion by April 7, 2025, *see* Minute Order (Dec. 6, 2024), but due to a series of either consented-to or unopposed motions for extensions of time that were granted, *see* Minute Orders (Apr. 3, May 8, July 17, Nov. 21, and Dec. 16, 2025), defendants' motion for summary judgment was not filed until June 6, 2025, *see* Defs.' Mot.  While briefing was ongoing, "[o]n September 23, 2025, the FBI provided Plaintiff with a 266-page interim release of records" coinciding with defendants withdrawing their objection predicated on the inapplicable Federal Rule of Criminal Procedure 6(e).  Defs.' Reply, Ex. 2, Third Hammer Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., Fed. Bureau of Investigations, Shannon R. Hammer ("FBI's 3rd Hammer Decl.") ¶ 5, ECF No. 34-2.

This dispute, which has been pending for more than three years, finally became ripe for resolution in February 2026, more than eight months after defendants' motion was filed.  *See* Pl.'s Reply.

## II.    LEGAL STANDARD

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "'The mere existence of some alleged factual dispute between the parties' will not

---

[3]    The parties initially indicated that 267 pages of records were identified as responsive to plaintiff's narrowed request, but clarified this representation was based on "a typographical error" and that "the correct number of responsive pages processed under the FOIA in response to Plaintiff's narrowed request was 266," and that, of these 266 pages, "the FBI released 2 pages in full, released 258 pages in part, and withheld 6 pages in full."  Defs.' Reply, Ex. 2, Third Hammer Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., Fed. Bureau of Investigations, Shannon R. Hammer ("FBI's 3rd Hammer Decl.") at 2 & n.2, ECF No. 34-2.

defeat summary judgment; 'the requirement is that there be no genuine issue of material fact.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Congress enacted the Freedom of Information Act "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Georgia v. U.S. Dep't of Just.*, 148 F.4th 724, 731 (D.C. Cir. 2025) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "The law generally commands that government agencies, 'upon any request for records . . . shall make the records promptly available to any person.'" *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357 (D.C. Cir. 2021) (ellipsis in original) (quoting 5 U.S.C. § 552(a)(3)(A)).  "Agencies may withhold from disclosure information that falls within one of the Act's nine enumerated exceptions." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 712 (D.C. Cir. 2025).  "Those 'limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'" *Id.* at 712-13 (quoting *Rose*, 425 U.S. at 361).  "This 'strong presumption in favor of disclosure places the burden on the agency to justify the withholdings of any requested documents.'" *Id.* at 713 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).  "The agencies may carry that burden by submitting declarations attesting to the basis for the agency's decision." *Am. First Legal Found. v. U.S. Dep't of Agric.*, 126 F.4th 691, 694 (D.C. Cir. 2025) (internal quotation marks omitted) (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1262 (D.C. Cir. 2023)).  In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question

by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

### III. DISCUSSION

Plaintiff relies upon both the FOIA and the Privacy Act as statutory bases to compel defendants to turn over the records. *See* Compl., Ex. 1, Letter from Maggie Abernethy, Staff Att'y, Mid-Atlantic Innocence Project, to Initial Processing Operations Unit, Record/Information Dissemination Section, FBI (Dec. 16, 2022), ECF No. 1-1; *see also* Pl.'s Opp'n at 1 (noting request at issue was submitted "under FOIA and the Privacy Act"). The D.C. Circuit instructs that, when plaintiffs "argue[] that both the Privacy Act and FOIA mandate disclosure of the documents," to withhold these documents, the agency "must demonstrate that the documents fall within some exception under *each* Act." *Martin v. Off. of Special Couns.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (emphasis in original). Thus, "[i]f a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*; *see also Deryck v. Dep't of Def.*, No. 22-cv-3290 (TNM), 2024 WL 4253102, at *7 (D.D.C. Sept. 20, 2024) ("So if both FOIA and the Privacy Act apply to a particular record, an agency must point to an exemption from both laws to justify a redaction or withholding decision." (citing *Martin,* 819 F.2d at 1184)); *Dalal v. U.S. Dep't of Just.*, 643 F. Supp. 3d 33, 48 (D.D.C. 2022) (TJK) ("If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." (quoting *Martin*, 819 F.2d at 1184)); *Boyd v. Exec. Off. for U.S. Att'ys*, 87 F. Supp. 3d 58, 87 (D.D.C. 2015) (ABJ) (quoting same); *Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 162 (D.D.C. 2010) (PLF) ("No agency may rely

on a FOIA exemption to withhold from an individual any record which otherwise is accessible to him under the Privacy Act, 5 U.S.C. § 552a(t)(1); conversely, no agency may rely on a Privacy Act exemption to withhold from any individual any record which otherwise is available to him under the FOIA, 5 U.S.C. § 552a(t)(2).").

Defendants rely on six exemptions under both the Privacy Act and the FOIA to justify the withholding of information from redacted documents or of documents in full.[4] The sufficiency of the defendants' explanations for reliance on these exemptions are addressed *seriatim* beginning with the Privacy Act exemption before turning to the FOIA exemptions. The *Vaughn* index submitted by defendants lists the exemptions applied to each page withheld in part or in full, but does not clarify whether those exemptions apply to the same or different redactions on the page. *See* Defs.' Mot., Ex. L, *Vaughn* Index, ECF No. 24-2 at 47. This leaves unclear whether a finding approving defendants' reliance on one exemption means that all withholdings on a page are justified and no further release is required, or that only some but not all redactions may be retained and additional information must be released. *See, e.g.*, *id.* at row 2 (listing Exemptions 6, 7(C), and 7(D), as applying to Bates-numbered document 2, without indicating whether these three exemptions apply coextensively to all withheld text or to different parts of redacted text). Given this complication of possibly overlapping exemptions, or not, in the *Vaughn* Index, the Court is unable to specify which Bates-numbered documents may be withheld, due to approval of an exemption, or released, due to disapproval of an exemption.

---

[4] Defendants additionally justify certain redactions under a seventh exemption, Defs.' Mot. at 16-20, FOIA Exemption 7(E), which provides that FOIA "does not apply to matters that are . . . records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). Plaintiff initially contested application of Exemption 7(E) to withhold a photo spread, *see* Pl.'s Opp'n at 18-20, but, in reply, acknowledges that this "challenge has been mooted by Defendants' partial reproduction of that document," Pl.'s Reply at 11 n.7, and thus no further analysis of this exemption is required.

### A.       Privacy Act Exemption (j)(2)

Defendants contend that Privacy Act Exemption (j)(2) applies to all the disputed withholdings. *See* Defs.' Mot. at 4-5.  This exemption states, in pertinent part, that "[t]he head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section . . . if the system of records is . . . maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals."  5 U.S.C. § 552a(j)(2).  According to defendants, "[t]he records at issue are law enforcement records because they were located through a search of the FBI's Central Records System and were compiled in the course of the FBI's investigation of Kenneth Copeland's involvement in the homicide of Wayne Edelin."  Defs.' Mot. at 5.  They further reason that, "because all potentially responsive records came from the Central Records System and the information was compiled for criminal investigatory purposes, it is exempt from disclosure under exemption (j)(2)."  *Id.*  Indeed, "all Bureau records are normally exempt from access under the Privacy Act as pertaining to criminal law enforcement."  *Wash. Laws.' Comm. for C.R. & Urb. Affs. v. U.S. Dep't of Just.*, 145 F.4th 63, 71 (D.C. Cir. 2025) (citing 5 U.S.C. § 552a(j)(2), and 28 C.F.R. § 16.97(a)(5)).

Plaintiff does not meaningfully contest defendants' argument other than to point out that the Privacy Act "does not affect [defendants'] obligations under FOIA, under which Plaintiff requested the same record."  Pl.'s Opp'n at 5.  The bottom line is that the viability of the withholdings under the Privacy Act exemption turns on whether defendants' reliance on six FOIA exemptions is justified.  *See Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011) (RMC) ("[T]he Privacy Act does not require that the FBI release any of the records kept in CRS [Central Records System].  Even though the Privacy Act does not require disclosure,

the FBI . . . must show that the documents are exempt from disclosure under each Act." (citing *Martin*, 819 F.2d at 1184)).

### B.    FOIA Exemption 3

Defendants rely on FOIA Exemption 3 for some disputed withholdings. This exemption provides, in pertinent part, that FOIA "does not apply to matters that are . . . specifically exempted from disclosure by statute . . . , if that statute—(A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) established particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

Defendants contend that the Child Victims' and Child Witnesses' Rights Act ("Child Victims Act"), 18 U.S.C. § 3509, meets the criteria for Exemption 3 to apply here to some of the withholdings. Defs.' Mot. at 6-7.[5] This Act defines "child" to mean a person "under the age of 18, who is or is alleged to be" either "a victim of a crime of physical abuse, sexual abuse, or exploitation" or "a witness to a crime committed against another person." 18 U.S.C. § 3509(a)(2)(A), (B). The Act, in subsection (d), titled "Privacy Protection," provides for the "Confidentiality of information" by persons "acting in a capacity described in subparagraph (B) in connection with a criminal proceeding . . . ." *Id.* § 3509(d)(1)(A). This subsection goes on, in the referenced subparagraph (B), to oblige "all employees of the Government connected with the case, including employees of the Department of Justice, any law enforcement agency involved in the

---

[5]    Defendants initially cited Federal Rule of Criminal Procedure 6(e) as an additional basis to withhold the documents under Exemption 3, *see* Defs.' Mot. at 6, but have withdrawn this argument, *see* Defs.' Reply at 1. Thus, to whatever degree information was withheld under Rule 6(e), that information should be released, to the extent no other exemption applies. *See generally Vaughn* Index; *id*. at 33 n.2 (applying Exemption (b)(3) based on "Federal Grand Jury Information–Federal Rule of Criminal Procedure 6(e)" to redactions on Bates numbers: 101, 115, 116, 118, 119, 123, 125, 130, 137, 142, 144, 155, 157, 159, 161, 175, 177, 179, 187, 238, 248, 249, 252, 254, 287, 329, 379, 381, 474, 477, 486, 514, 515, 538, 693, 696, 698, 708, 709, and 710).

case, and any person hired by the Government to provide assistance in the proceeding," *id.* § 3509(d)(1)(B)(i), to "keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their content has access" and to disclose such documents "or the information in them that concerns a child only to persons who, by reason of their participation in the proceeding, have reason to know such information," 18 U.S.C. § 3509(d)(1)(A)(i), (ii). This confidentiality obligation attaches only "in connection with a criminal proceeding," however, and this leads directly to the parties' differing views on the scope of this obligation and its applicability to a D.C. Superior Court criminal trial.

The term "criminal proceeding" is not defined in the Child Victims Act. Plaintiff points out that defendants do not explain why the requirements of the Child Victims Act would apply to proceedings in D.C. Superior Court nor offer a "textual reason to read 'criminal proceedings' to include proceedings in state court" or muster "case law to support their position." Pl.'s Reply at 2. For their part, defendants argue that "[t]he Court should decline Plaintiff's invitation to read a requirement into a statute meant to protect children that does not exist." Defs.' Reply at 3. While the parties cite to no judicial decision addressing whether state court proceedings are covered by the term "criminal proceeding," as used in the Child Victim's Act, and no case has been independently located, the D.C. Circuit provided a gloss on this statute suggestive that the provision only applies to proceedings in federal court. In *Corley v. Department of Justice*, 998 F.3d 981, 983, 985 (D.C. Cir. 2021), the Court wrote that "[t]he Child Victims' Act addresses the treatment of 'child' victims and witnesses by the federal criminal justice system," before determining "that the Child Victims' Act unambiguously qualifies as an Exemption 3 statute" to

withhold documents related to a federal criminal proceeding in a federal District Court in the Southern District of New York.

The text of the Child Victims Act, 18 U.S.C. § 3509, is sufficient to demonstrate that "criminal proceedings" refers only to proceedings in federal court and does not stretch to encompass state-court matters. The presumption of consistent usages instructs that, "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (quoting A. Scalia & B. Garner, *Reading Law* 170-71 (2012)). This Act uses the phrase "criminal proceeding" in five places. *See* 18 U.S.C. § 3509(d)(1)(A), (k), (m)(1), (m)(2)(A), (m)(3). For example, subsection (k) states that "[i]f, at any time that a cause of action for recovery of compensation for damage or injury to the person of a child exists, a criminal action is pending which arises out of the same occurrence and in which the child is the victim, the civil action shall be stayed until the end of all phases of the criminal action and any mention of the civil action during the *criminal proceeding* is prohibited." 18 U.S.C. § 3509(k) (emphasis added). If the term "criminal proceeding" is meant to cover actions in both federal and state courts, subsection (k) would raise issues about Congress substantively modifying or displacing state evidence laws by foreclosing "any mention of the civil action during the criminal proceeding," a consequence from this oblique language that would be passing strange. Similarly, part of subsection (m) prescribes that "[n]otwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any *criminal proceeding*, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography . . ., so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(2)(A) (emphasis added). An interpretation that Congress has, through this language, dictated how trial judges in state courts must rule on a motion

is implausible.  The natural reading of "criminal proceedings" throughout this section is that this phrase refers to criminal actions in federal courts but not those brought in state courts.

The location of the statute confirms its application is limited to only federal criminal proceedings because 18 U.S.C. Part II is titled, "Criminal Procedure" and within this part are rules governing the federal courts.  Indeed, three places in the Child Victims Act reference its effect on *federal* procedural or evidentiary rules.  *See* 18 U.S.C. § 3509(c)(1) ("Nothing in this subsection shall be construed to abrogate rule 601 of the Federal Rules of Evidence."); *id.* § 3509(f) ("In preparing the presentence report pursuant to rule 32(c) of the Federal Rules of Criminal Procedure, the probation officer shall request information from the multidisciplinary child abuse team and other appropriate sources to determine the impact of the offense on the child victim and any other children who may have been affected."); *id.* § 3509(m)(2)(A) ("Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.").

Finally, the purpose of the Act, as explained by the legislative history, confirms that the Act's scope only applies to federal courts and was not meant to circumscribe a state court's authority in state proceedings.  The House Judiciary Report for the Child Victims Act reported that the legislation "was designed to address a number of these fundamental concerns about child abuse and America's criminal justice system, in particular: . . . "[w]hile there are a limited but rising number of child abuse cases tried in the Federal courts, many states have adopted innovative procedures that have far outpaced Federal law, leaving those children who do enter the Federal system (through military bases, Indian reservations, and from other Federal lands and facilities)

14

inadequately protected.  The legislation . . . is not designed, however, to garner any further Federal jurisdiction over child abuse cases."  H.R. Rep. No. 101-681(I), at 166 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6572.  Additionally, "[a]t the same time that many states have moved forward in protecting child victims and witnesses, there is also a great deal of inconsistency and disparity among state laws (compare, for example, California and Washington law), and while this legislation does not contemplate in any way further federalizing child abuse, there is a need for Federal legislation that can serve as a model to states as they develop their own Child Victims Bill of Rights."  *Id.*  Finally, the Congressional Budget Office Cost Estimate includes no cost estimate related to anything but "changes and additions to *federal* laws related to crime and punishment." *Id.* at 204, 1990 U.S.C.C.A.N. at 6610 (emphasis added).

In sum, the text, purpose and legislative history for the Child Victims Act makes clear that this statute is inapplicable to "criminal proceedings" held in State or local courts that, like D.C. Superior Court, are not federal courts subject to federal procedural and evidentiary rules.  The inapplicability of the Child Victims Act to the disputed records means that FOIA Exemption 3 predicated on this Act is unavailable to defendants as a basis for withholding information or documents.[6]

C.    FOIA Exemptions 7(C)

Defendants contend that some of the disputed withholdings are proper under FOIA Exemption 7(C).  *See* Defs.' Mot. at 7-13.[7]  This exemption permits the withholding of "records

---

[6]    The *Vaughn* index does not make clear which withholdings rest only on Exemption 3 and the Child Victims Act, or whether those same withholdings are justified by other exemptions.  Defendants note, however, that the determination of the propriety of the application of this exemption is of no consequence because "the information withheld under Exemption 3 was likewise withheld under other exemptions," so "[r]egardless of the path the Court takes, the information was properly withheld to protect names and identifying information of minor victims and witnesses."  Defs.' Reply at 3.

[7]    The *Vaughn* Index indicates that the following Bates-numbered pages have redactions pursuant to Exemptions 6 and 7(C): 2, 3, 16, 17, 18, 19, 20, 21, 23, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 49, 50,

or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).[8]  The D.C. Circuit has determined that the test for whether Exemption 7(C) applies is to "weigh the public interest in the release of information against the privacy interest in nondisclosure." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (quoting *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003)); *see also Brown v. Fed. Bureau of Investigation*, 143 F.4th 481, 486 (D.C. Cir. 2025) ("To invoke this exemption, an agency must find that the privacy interests at stake outweigh any public interest in disclosure." (citing *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991)).  In addition, "[u]nder the FOIA Improvement Act of 2016, [Pub. L. No. 114-185, 130 Stat. 538 (2016),] the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest

---

51, 53, 54, 55, 56, 57, 60, 61, 63, 64, 65, 67, 68, 74, 85, 86, 89, 91, 92, 95, 100, 101, 103, 109, 112, 115, 116, 118, 119, 120, 121, 123, 125, 130, 132, 137, 141, 142, 143, 146, 147, 148, 155, 157, 159, 161, 164, 168, 171, 173, 174, 175, 176, 177, 179, 187, 190, 192, 193, 194, 216, 218, 220, 223, 230, 231, 232, 233, 234, 238, 243, 245, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 260, 262, 272, 278, 281, 283, 284, 287, 289, 293, 297, 312, 317, 319, 322, 323, 324, 327, 328, 329, 330, 335, 336, 337, 343, 344, 346, 348, 349, 352, 360, 365, 369, 370, 371, 372, 379, 380, 381, 382, 383, 394, 415, 416, 421, 425, 427, 428, 430, 431, 432, 445, 448, 452, 453, 454, 457, 459, 460, 461, 464, 469, 470, 471, 473, 474, 476, 477, 480, 483, 485, 486, 490, 491, 503, 504, 506, 507, 508, 513, 514, 515, 517, 518, 519, 520, 521, 523, 524, 531, 532, 534, 535, 537, 538, 541, 542, 543, 567, 569, 573, 574, 691, 692, 693, 694, 695, 696, 698, 702, 704, 705, 708, 709, 710, 712, 716, 722, 727, 728, 739, 740, 754, 772, 773, 794, 795, 800, 801, 802, 803, 804, 805, 806, 808, 815, 823, 826, 827, 848, 857, 858, 859, 861, 863, 864, 882, 887, 888, 889, 890, 945, 948, and 949.  Puzzlingly, footnote 7 states that "[t]he FBI is now asserting Exemption category (b)(6)/(b)(7)(C)-3 on the following Bates pages," including page 792, even though that page is not otherwise listed in the *Vaughn* Index. *Id.* at 33 n.7.

[8]      Defendants also rely upon FOIA Exemption 6, *see* Defs.' Mot. at 7-13, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so [courts] need only analyze the latter." *Brown v. Fed. Bureau of Investigation*, 143 F.4th 481, 486 n.3 (D.C. Cir. 2025) (quoting *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1030 (D.C. Cir. 2024)); *see also Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).").  Thus, Exemption 6 need not be separately considered.

protected by' the FOIA exemption." *Reps. Comm.*, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

The D.C. Circuit has explained that "Congress adopted the FOIA Improvement Act in part out of 'concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure.'" *Id.* (alteration in original) (quoting S. Rep. No. 114-4, at 2 (2015), *reprinted in* 2016 U.S.C.C.A.N. 321, 322). In effect, Congress added this requirement so that "[a]gencies cannot rely on 'mere "speculative or abstract fears," or fear of embarrassment' to withhold information." *Id.* (quoting S. Rep. No. 114-4, at 8, 2016 U.S.C.C.A.N. at 324) The Improvement Act thus "requires a 'particularized inquiry into what sort of foreseeable harm would result from the material's release" and "compels an agency to release requested materials unless it can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Hum. Rts. Def. Ctr.*, 126 F.4th at 717 (quoting *Reps. Comm.*, 3 F.4th at 369 & n.2). This "requirement 'impose[s] an independent and meaningful burden on agencies.'" *Reps. Comm.*, 3 F.4th at 369 (alteration in original) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (BAH)).

Plaintiff lodges two objections to defendants' redactions under Exemption 7(C).[9] First, plaintiff contends that "[d]efendants have wrongly redacted the identity of individuals who testified against [Copeland] at trial and, by extension, information they provided to investigators that could identify them." Pl.'s Opp'n at 13. Citing the "availability of the trial transcript," which was obtained "from the D.C. Court of Appeals in less than one month, free of charge," and the fact

---

[9]    Plaintiff initially raised four arguments, *see* Pl.'s Opp'n at 12-15, but withdrew two arguments following defendants' clarifications about a document and release of previously redacted information in other documents, *see* Pl.'s Reply at 5 n.2.

that the individuals testified at a public trial, plaintiff argues that defendants can "articulate no incremental privacy harm," *id.* at 13-14, to warrant withholding under Exemption 7(C). Second, plaintiff contends that "[d]efendants likely improperly redacted information related to individuals disclosed by the Assistant U.S. Attorney who prosecuted the case, Special Agent Regini, or other government witnesses on direct examination" and that, "[d]espite these government-made or government-elicited acknowledgements, which negate harm from disclosure, Defendants still have withheld all information related to these individuals." *Id.* at 14-15.

In the face of the already public nature of the identities of testifying witnesses and names of other individuals disclosed by government witnesses or the prosecutor, defendants have an uphill battle to defend redactions of this already public information. This hill proves too steep for the justifications proffered under Exemption 7(C). With respect to both testifying witnesses and the individuals whose names were disclosed by the government during trial, defendants' position is that "the FBI determined that disclosure of the names and identifying information of these third parties within the responsive documents would reveal little or nothing about the FBI's own conduct." Defs.' Reply at 5. This defensive position is far too short-sighted. To be sure, "[i]t is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotation marks omitted) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). The government is certainly "up to" something serious when investigating, charging, prosecuting and incarcerating a person. While the government's conduct is certainly of personal interest to the person who is targeted by the government's law enforcement efforts, the public also has significant interest in how these efforts are carried out. The D.C. Circuit has, in fact, noted the "considerable

18

public interest in the potential innocence of individuals sentenced to death" following "high-profile exonerations of death-row inmates," and that "[t]his interest has manifested itself in several media, including newspaper articles, editorials, journalistic exposés, novels, and plays." *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1176 (D.C. Cir. 2011). Thus, though Copeland certainly has a personal stake in reviewing records pertinent to his convictions, the public also has a legitimate and strong interest in ensuring that a lengthy period of incarceration is imposed correctly, not only for a myriad of legal, moral and humane reasons, but also due to the concomitant burdens on the public fisc and resources.

Defendants next point to the privacy interests for the witnesses and those mentioned at trial, emphasizing that "merely testifying at a public trial as a witness does not mean that someone forfeits all privacy interests." Defs.' Reply at 6. It is unclear how releasing records collected in connection with Copeland's trial regarding the publicly testifying witnesses and publicly disclosed names, would "forfeit all [their] privacy interests," however. Moreover, to the extent defendants also suggest that "their knowledge of events makes third parties an attractive target for harassment," *id.* at 8, this too fails to persuade as entirely speculative, given no evidence is proffered as to why such harassment or retaliation would occur now when the events of the trial occurred more than thirty years ago. Indeed, defendants acknowledge that they lack awareness of whether these individuals are even still living. *Id.* at 7. Balancing the public interest against defendants' proffered privacy interests tilts in favor of releasing the records.

For the foreseeable harm analysis, plaintiff highlights that defendants provide no explanation for how disclosure of documents for witnesses and those mentioned at trial gives rise to harm that is more than a "speculative or abstract fear[]." Pl.'s Opp'n at 12 (quoting *Hum. Rts. Def. Ctr.*, 126 F.4th at 716). Defendants respond that "given the age of Mr. Copeland's criminal

19

case, an official acknowledgment of these third party's association with an FBI investigation is likely to lift that association out of practical obscurity and into the forefront of public awareness, further aggravating the stigma associated with such a disclosure." Defs.' Reply at 5. This argument is upside-down: the fact that these individuals were publicly named in a trial more than three decades ago makes any further reputational risk than that which they may have experienced at the time, highly speculative. Such speculative harm is foreclosed by Congress's creation of the foreseeable harm requirement. Defendants have not satisfied the foreseeable harm requirement imposed by the FOIA Improvement Act of 2016 and thus reliance on Exemption 7(C) for withholding information related to publicly disclosed trial witnesses and those mentioned by the government at trial does not pass muster.

The government has thus failed to carry its burden to show that Exemption 7(C) justifies redactions of the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements including by the Assistant U.S. Attorney who prosecuted the case, Special Agent Regini, and other government witnesses under examination. Yet, again, the record before the Court is unclear whether all withholdings under Exemption 7(C) overlap, or not, with those made under other Exemptions, including Exemption 7(D), an issue that must be clarified before granting summary judgment and ordering release of specific disputed records withheld under this exemption. *See supra* n.7.

### D.   FOIA Exemptions 7(D)

Defendants argue that interview notes, investigation summaries, and other documentation involving confidential informants are properly withheld under FOIA Exemption 7(D). Defs.' Mot.

at 13-16.[10]    This exemption "exempts from disclosure agency records 'compiled for law enforcement purposes' . . . if release of those records 'could reasonably be expected to disclose' the identity of, or information provided by, a 'confidential source.'"  *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 167 (1993) (quoting 5 U.S.C. § 552(b)(7)(D)); *see also Brown*, 143 F.4th at 487.[11]  "Plaintiff does not dispute Defendants' showing that they redacted the identity of confidential sources and information provided by them," but argues that, "with respect to trial witnesses and people identified as sources at trial," reliance on Exemption 7(D) "founders on the shoals of official acknowledgement and foreseeable harm."  Pl.'s Opp'n at 16.  These objections overlap with plaintiff's objections to the invocation of Exemption 7(C), but Exemption 7(D) pertains only to individuals who were confidential informants, and "[u]nlike Exemptions 6 and 7(C), . . . requires no balancing of public interests."  *Roth*, 642 F.3d at 1184.  The official acknowledgment issue raised by plaintiff is addressed first, followed by the foreseeable harm analysis.  After review of the record, including an *ex parte* declaration submitted by defendants regarding the applicability of Exemption 7(D), *see* Defs.' *In Camera*, *Ex Parte* Decl. of Shannon R. Hammer, ECF No. 36-1, defendants have met their burden to show that disclosure of the

---

[10]    Defendants applied Exemption 7(D) to portions of the following Bates-numbered documents: 2, 3, 38, 39, 41, 47, 49, 50, 51, 53, 54, 55, 56, 57, 67, 68, 91, 92, 95, 100, 101, 103, 109, 112, 115, 116, 118, 119, 120, 121, 123, 125, 130, 132, 137, 142, 143, 146, 147, 155, 157, 159, 161, 164, 168, 171, 173, 174, 175, 177, 179, 187, 194, 216, 218, 220, 223, 230, 231, 233, 234, 238, 245, 248, 249, 250, 251, 252, 254, 255, 256, 257, 272, 281, 283, 287, 289, 293, 297, 312, 317, 319, 322, 323, 324, 327, 328, 329, 335, 336, 337, 346, 348, 349, 352, 360, 365, 369, 370, 371, 372, 379, 380, 381, 382, 383, 394, 415, 416, 421, 425, 430, 431, 432, 445, 448, 454, 457, 459, 460, 461, 464, 469, 470, 471, 473, 474, 476, 477, 480, 483, 485, 486, 490, 491, 508, 513, 514, 515, 517, 518, 519, 520, 521, 523, 524, 534, 535, 537, 538, 541, 542, 543, 567, 569, 573, 574, 692, 693, 694, 695, 696, 698, 702, 704, 708, 709, 710, 712, 716, 727, 728, 739, 740, 754, 772, 773, 794, 795, and 823.  *See Vaughn* Index.  The record does not indicate whether Exemption 7(D) applies to all redactions on each of these pages or only to some, as many of the pages cite additional exemptions as applicable.

[11]    Exemption 7(D), in pertinent part, protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).

information currently withheld pursuant to Exemption 7(D) would reasonably be expected to reveal the identities of or information furnished by confidential sources.

### 1. *Official Acknowledgment*

Plaintiff argues that "Defendants, through Special Agent Regini's sworn testimony, have officially acknowledged" four individuals—Edwin Robinson, Emily Robinson, Theodore Robinson, and Gerald Edelin—as "informant[s] and described the information [they] provided," and have therefore "waived their right to assert Exemption 7(D) over this information," Pl.'s Opp'n at 16, citing the doctrine that "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption," *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013); *see* Pl.'s Opp'n at 9 (citing *ACLU v. CIA* to explain the official acknowledgment doctrine). Similarly, for three of these individuals—Edwin Robinson, Emily Robinson, and Gerald Edelin, who testified at trial—plaintiff argues that "an agency may not withhold 'the "exact information" to which the source[s] actually testified,'" since that information was elicited by the government at trial. Pl.'s Opp'n at 17 (quoting *Davis*, 968 F.2d at 1281).[12]

According to plaintiff, descriptions in defendants' *Vaughn* index of two sets of partially withheld documents "plainly" show that defendants have improperly redacted these four individuals' names and the information they furnished to the government, as revealed at trial. Pl.'s Opp'n at 16. One of these sets of partially withheld documents, with Bates-numbers 51, 56, 67,

---

[12]    Plaintiff argues and defendants do not dispute that these witnesses' own trial testimony, elicited by the government, could constitute an "official acknowledgment" of the testimony's contents. *See* Pl.'s Opp'n at 9-10; Pl.'s Reply at 3 n.1 (noting that defendants did not dispute this point in response to plaintiff's cross-motion). The D.C. Circuit has treated trial witness testimony as being in the "public domain," which, like "information that has been 'officially acknowledged,'" "the government cannot rely on an otherwise valid exemption claim to justify withholding." *Davis*, 968 F.2d at 1279. Since the D.C. Circuit has treated the "public domain" and "official acknowledgment" exceptions to FOIA exemptions concurrently when dealing with prosecution-witness trial testimony, plaintiff's assertion that Edwin Robinson's, Emily Robinson's, and Gerald Edelin's own testimony constitutes an "official acknowledgment" is assumed, *arguendo*, to be correct.

68, and 394, are described in defendants' *Vaughn* index as involving or documenting an interview with a "minor confidential source" or "minor child informant" on April 18, 1994. *See Vaughn* Index. In open court, Special Agent Regini described an interview with Edwin Robinson, who was ten at the time, on that same date: April 18, 1994. Pl.'s Opp'n, Ex. 5, Trial (Dec. 6, 1994) Tr. at 14:12-18:9, 19:10-12. Plaintiff contends that these Bates-numbered documents "plainly pertain[] to Mr. Robinson" because of the alignment of the interview date and subject, and seek disclosure of those documents, arguing that, to the extent their contents match Regini's trial testimony, they are not subject to Exemption 7(D) because the government has officially acknowledged their contents, including that Edwin Robinson was a confidential informant. Pl.'s Mot. at 16. The second set of partially withheld documents, with Bates-numbers 109, 112, 120, 121, 130, 142, and 143, are described in the *Vaughn* index as interviews with "informant" or "third party individual" conducted in May 1994, and plaintiff posits these reflect interviews with Gerald Edelin, who was revealed at trial to have contacted the police around that time. Pl.'s Opp'n at 17. Again, plaintiff argues that these records must be released because defendants have officially acknowledged Gerald Edelin as a confidential informant. *Id.* Further, plaintiff argues that these withholdings suggest similar, but less obvious, withholdings of the identities of and information provided by Edwin Robinson, Emily Robinson, Theodore Robinson, and Gerald Edelin may exist elsewhere in the records withheld in full or in part by defendants. *Id.*

Defendants do not dispute that the testimony of Special Agent Regini named as confidential informants Edwin Robinson, Emily Robinson, and Gerald Edelin—all three of whom also testified at the trial—and a fourth individual, who did not testify, named Theodore Robinson, and that this disclosure and testimony amounts to an official acknowledgment of both the status as confidential informants of these three civilian witnesses and Theodore Robinson, and of some of the

23

information they furnished to the government.  *See generally* Defs.' Reply at 8-9; FBI's 3rd Hammer Decl. ¶ 12.  Nonetheless, defendants argue that records are appropriately redacted because "the volume of information that Edwin Robinson and other parties provided has not been disclosed," and therefore releasing information gathered from Edwin Robinson, Emily Robinson, Theodore Robinson, and Gerald Edelin would allow plaintiff or other members of the public to (1) glean information provided by these confidential informants to the government but not revealed at trial and (2) deduce that any information *not* identified as provided by these four individuals was provided by another confidential informant who was not revealed at trial.  FBI's 3rd Hammer Decl. ¶ 12.  Both these concerns are warranted and justify defendants' withholdings under Exemption 7(D).

First, "public testimony by 'confidential sources' does not waive the FBI's right to invoke Exemption 7(D) to withhold the identity of a confidential source or information furnished by a confidential source not actually revealed in public." *Parker v. Dep't of Just.*, 934 F.2d 375, 379-80 (D.C. Cir. 1991).  Accordingly, "[t]he government is obligated to disclose only the 'exact information' to which the source actually testified" at trial, *Davis*, 968 F.2d at 1281 (quoting *Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 577 (D.C. Cir. 1990)), as plaintiff acknowledges, *see* Pl.'s Opp'n at 17.  Defendants attest that "[t]he FBI confirm[ed], pursuant to its line-by-line review of the records against Mr. Copeland's trial transcripts, that none of the details are an exact match to the information withheld by the FBI."  FBI's 3rd Hammer Decl. ¶ 20.  Plaintiff deems this attestation "implausible," noting that Special Agent Regini's testimony included "the fact that Edwin Robinson identified Mr. Copeland as the killer, which is almost certainly referenced in the summaries of Special Agent Regini's April 18, 1994 interview with him."  Pl.'s Reply at 9. Agency declarations describing redactions under FOIA receive "a presumption of good faith,

which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Defendants' sworn attestation that there are no exact matches to trial testimony in the records sought is credited here, to support the finding that withholdings of information, which was furnished by confidential informants and not otherwise revealed at trial, is proper under Exemption 7(D).

For good measure, defendants' second justification for these withholdings is also persuasive.  Defendants argue that releasing records with information, which does not exactly match the trial testimony, would run the risk of revealing that the information was provided by *another* confidential source, who did not testify at trial, potentially allowing plaintiff or others to narrow down the identities of other confidential sources.  *See* FBI's 3rd Hammer Decl. ¶ 12. Another Judge of this Court reasoned that "[d]enying the status of an individual as a confidential source would allow the requester, through the process of elimination, to uncover the identity of any confidential source," *Love v. U.S. Dep't of Just.*, No. 13-cv-1303 (TSC), 2015 WL 5063166, *4 (D.D.C. Aug. 26, 2015) (citation omitted), and the same goes for denying that a known confidential source provided a particular piece of information.  For instance, if defendants were directed to release records insofar as they identify Edwin Robinson as a confidential informant, and then defendants did *not* release some of the Bates-numbered documents discussing an April 18, 1994, interview with a minor witness, plaintiff or the public could conclude that there was an additional minor confidential informant and, through the process of elimination and familiarity with the crime, discover who that individual is.  *See* FBI's 3rd Hammer Decl. ¶ 12.  In other words, though plaintiff claims that certain records "plainly" pertain to Mr. Robinson or "presumably" pertain to Gerald Edelin, Pl.'s Opp'n at 16; Pl.'s Reply at 9, if plaintiff is wrong, an order directing

defendants to release information pertaining to Robinson or Edelin would, by the process of elimination, "could reasonably be expected" to reveal the identities of other confidential sources. 5 U.S.C. § 552(b)(7)(D).

### 2.    *Foreseeable Harm*

Additionally, plaintiff argues that because Special Agent Regini revealed these four government informants at trial and three of these four informants—Edwin and Emily Robinson and Gerald Edelin—themselves testified at trial, there is no foreseeable harm in releasing records containing their identities or information related to the trial testimony of Special Agent Regini or these witnesses, even if not the "exact information" revealed at trial.  Pl.'s Opp'n at 16.  Doubling-down on this point, plaintiff argues that "*any* information trial witnesses provided to law enforcement, whether or not that information came out at trial," should be disclosed unless such release results in an "incremental harm," beyond that already resulting from the fact that the public knows these individuals informed for the government as well as some of the information they furnished.  *Id.* at 17-18 (emphasis in original).  Without such a showing, plaintiff argues, defendants cannot satisfy the foreseeable harm requirement for withholdings pursuant to 5 U.S.C. § 552(a)(8)(A)(i)(I).  *Id.*

For the reasons discussed above, the foreseeable harm requirement is met here.  The "paramount objective of Exemption 7(D) . . . is to keep open the Government's channels of confidential information."  *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).  Plaintiff argues that "the public already knows" that these four individuals were informants, and that they will therefore suffer "no incremental harm from un-testified-to information."  Pl.'s Opp'n at 18.  This argument as to foreseeable harm fails for the same two reasons that the exemption applies.  First, even if plaintiff believes that trial witnesses would suffer minimal "embarrassment

or retaliation" from the release of information not included in their trial testimony, *id.* at 17, the interest protected by Exemption 7(D) includes defendants' credibility as the keepers of confidential sources' information, *see Birch*, 803 F.2d at 1212.  A firm belief by plaintiff or even the Court that releasing now information not otherwise revealed at trial would not cause "incremental harm" to a trial witness, *see* Pl.'s Opp'n at 18, is to no avail since the interest protected under Exemption 7(D) is different: revealing information defendants promised to keep confidential is reasonably likely to discourage confidential informants from trusting federal law enforcement in the future.

Furthermore, plaintiff's reasoning neglects to consider the potential harms to other confidential informants whose identities were not disclosed at trial.  If plaintiff, Mr. Copeland, or the public were able to ascertain, even by deduction, the identities of confidential informants not revealed at trial, the FBI's future investigative efforts could be seriously stymied.  *See* FBI's 3rd Hammer Decl. ¶ 12.  This harm is not "speculative or abstract," *Hum. Rts. Def. Ctr.*, 126 F.4th at 716, but rather a concrete concern that publicly unknown confidential informants will find themselves revealed by the agency they trusted to keep their identities secret.

Thus, defendants have sufficiently justified withholding information in records that mention Edwin Robinson, Emily Robinson, Theodore Robinson, and Gerald Edelin, on the basis that doing so would reveal that any piece of information *not* linked with one of those four individuals could be attributed to another confidential informant based on plaintiff's existing knowledge of the circumstances surrounding the murder of Wayne Edelin.  Summary judgment is therefore granted to defendant and denied to plaintiff as to Exemption 7(D).  In other words, any document or portion of a document withheld pursuant to Exemption 7(D) may continue to be withheld, regardless of what other exemptions were asserted for that portion.  On the record

27

available, this may apply to some or all of the redactions on the Bates-numbered pages listed *supra* n.10, depending on which redactions were made pursuant to Exemption 7(D).

### E.     FOIA Exemption 7(F)

Finally, defendants justify certain disputed withholdings under Exemption 7(F).[13]   This exemption covers the release of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual."   5 U.S.C. § 552(b)(7)(F).   "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm., U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014).   Plaintiff argues that "[t]he defects with [defendants' withholdings under] Exemption 7(F) mirror those with the privacy exemptions and Exemption 7(D): Defendants wrongly applied it to information that would identify people who are publicly known to have already testified against Mr. Copeland, and thus would suffer no incremental safety threats if Defendants reiterated that they were involved in his prosecution."  Pl.'s Opp'n at 20.   Plaintiff thus appears to contest only invocations of Exemption 7(F) that are applied to individuals who testified at trial.

Most of these pages for which Exemption 7(F) is asserted also list Exemption 7(D) as a justification for redaction, *see Vaughn* Index, but since the *Vaughn* index does not show line-by-line justifications for redactions, there may be some non-overlapping justifications on these pages, such that, for some redactions, defendants assert Exemption 7(F), but not Exemption 7(D).  To the

---

[13]      Defendants applied Exemption 7(F) to portions of the following Bates-numbered documents: 56, 67, 68, 142, 157, 174, 220, 223, 230, 293, 297, 319, 322, 323, 324, 327, 328, 329, 336, 337, 360, 365, 368, 369, 371, 372, 380, 381, 382, 383, 474, 477, 491, 518, 519, 520, 541, 542, 543, 693, 727, 728, 739, 740, 754, 772, 773, 794, and 795. Each of these documents also contains redactions pursuant to Exemption 7(D), but the record is unclear whether these two exemptions are applied to the same redactions.

extent Exemption 7(D) has been asserted as to any redaction for which Exemption 7(F) is also asserted, those redactions are justified by Exemption 7(D) and may be withheld without deciding the applicability of Exemption 7(F).  *See supra* Part III.D.

The extent, if any, to which Exemption 7(F) was asserted to withhold information pertaining to trial witnesses but for which Exemption 7(D) was not asserted, is not revealed by the record, nor is the applicability of Exemption 7(F) to such information briefed, since briefing on both sides focuses on the applicability of Exemption 7(F) to confidential informants who testified at trial (and whose information is therefore covered by Exemption 7(D)).  *See* Pl.'s Opp'n at 20-21; Defs.' Reply at 10-11.  If any information falls into this category, summary judgment is denied to both plaintiff and defendants as to whether Exemption 7(F) was properly asserted.[14]

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part, plaintiff's cross-motion for summary judgment and request for *in camera* review is denied.  Specifically, summary judgment is GRANTED to defendants and DENIED to plaintiff as to all withholdings justified by Exemption 7(D).  To the extent that withholdings

---

[14]    Defendants also assert that they have "properly released any reasonably segregable, nonexempt information." Defs.' Mot. at 22. FOIA requires that "[a]n agency shall . . . take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). As the foregoing analysis has identified the potential for improper withholdings, any determination of the propriety of the segregation of releasable information would be premature.

For similar reasons, plaintiff's request for *in camera* review is also denied as premature. "The decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'" *Lam Lek Chong v. DEA*, 929 F.2d 729, 735 (D.C. Cir. 1991) (quoting *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 392 (D.C. Cir. 1987)). The D.C. Circuit has emphasized a "strong presumption in favor of public access to judicial proceedings," *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991), and *in camera* proceedings relieves the agency somewhat of having to explain the basis for assertion of an exemption, thereby depriving the public of access to reasons for the withholding. *See also, e.g.*, *M.M v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998) ("We begin with the fundamental presupposition that it is the responsibility of judges to avoid secrecy, in camera hearings and the concealment of the judicial process from public view. . . . Courts are public institutions which exist for the public to serve the public interest." (ellipsis in original)); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) ("The process of *in camera* review ineluctably places the court in a role that runs contrary to our fundamental principle of a transparent judicial system."). Here a relatively large number of documents are disputed and thus transparency counsels in favor of additional briefing before resorting to *in camera* review.

29

contested by plaintiff are made pursuant to Exemptions 3, 6, 7(C), and 7(F) do not overlap with Exemption 7(D), summary judgment is DENIED as to both plaintiff and defendants pending further clarification of the contents of such records.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  March 19, 2026

_____
**BERYL A. HOWELL**
United States District Judge