**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MID-ATLANTIC INNOCENCE PROJECT,

        Plaintiff,

        v.

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

        Defendants.

Civil Action No. 23-cv-2112 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

This case is before the Court for the second time with the parties, again, seeking summary judgment previously denied in their respective favors on the remaining disputed application of a single exemption, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Specifically, defendants, the U.S. Department of Justice and its component Federal Bureau of Investigation ("FBI"), seek partial reconsideration of the prior decision in this case rejecting defendants' withholdings under FOIA Exemption 7(C), s*ee* Defs.' Partial Mot. for Recons. ("Defs.' Mot.") at 5, ECF No. 43, which reconsideration, if granted, would result in summary judgment to defendants. Meanwhile, plaintiff Mid-Atlantic Innocence Project has renewed its motion for summary judgment for production of records responsive to its FOIA request but withheld under Exemption 7(C). Pl.'s Renewed Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 44.

As summarized in the prior decision in this case, plaintiff represents Kenneth G. Copeland, who is currently serving a life sentence on his December 13, 1994, conviction for first-degree premeditated murder. *Mid-Atl. Innocence Project v. Fed. Bureau of Investigation*, No. 23-cv-2112 (BAH), 2026 WL 775907, at *1-2 (D.D.C. Mar. 19, 2026). In connection with that representation,

1

plaintiff initiated this lawsuit after receiving no response to a FOIA request for FBI records pertaining to Copeland and related to the homicide for which he stands convicted. *See id.* at *3.

After production was completed in February 2024, a dispute remained over the extent of withholdings in defendants' productions, and protracted summary judgment briefing began, and became ripe for resolution two years later, in February 2026. *See id.* at *3. In March 2026, plaintiff's cross-motion for summary judgment was denied, and defendants' motion for summary judgment was denied in part and granted to approve the withholding of "any document or portion of a document withheld pursuant to Exemption 7(D) . . ., regardless of what other exemptions were asserted." *Id.* at *12. Defendants were ordered to clarify the extent to which the exemptions listed in the *Vaughn* index overlapped, and the parties were ordered to conduct further briefing to facilitate the "expeditious resolution of the remaining issues in this matter." *Id.* at *1.

In compliance with that order, defendants have since clarified that withholdings made pursuant to Exemption 7(D), the only exemption for which summary judgment has already been granted to defendants, overlapped completely with withholdings made pursuant to disputed Exemptions 3 and 7(F), and overlapped partially with withholdings made pursuant to Exemptions 6 and 7(C), which are analyzed together. Defs.' Mot., Att. 1, Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., FBI, Isabel Marie Lara ("Lara Decl.") ¶ 5, ECF No. 43-1.[1] As any determination about the propriety of the application of Exemptions 3 and 7(F) would have no effect on the withholdings, the parties have forgone arguments about those exemptions. *See* Pl.'s Mot., Pl.'s Mem. in Opp'n to Defs.' Mot. for Recons. & in Supp. of Its Renewed Mot. for Summ. J. ("Pl.'s Mem.") at 3, ECF No. 44-1; Defs.' Mot. at 6. Instead,

---

[1]    "When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so [courts] need only analyze the latter." *Mid-Atl. Innocence Project*, 2026 WL 775907, at *7 n.8 (alteration in original) (quoting *Brown v. Fed. Bureau of Investigation*, 143 F.4th 481, 486 n.3 (D.C. Cir. 2025)). "Thus, Exemption 6 need not be separately considered." *Id.*

defendants seek reconsideration of the previous decision's finding that "[t]he government has thus failed to carry its burden to show that Exemption 7(C) justifies redactions of the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements," *Mid-Atl. Innocence Project*, 2026 WL 775907, at *9, arguing that this conclusion is wrong because "*Kowal* [*v. United States Department of Justice*, 107 F.4th 1018 (D.C. Cir. 2024)], controls the outcome in this matter," Defs.' Mot. at 5.  Plaintiff, for its part, seeks summary judgment to deny withholdings under Exemption 7(C), contending that "[t]he Court's decision is correct and entirely consistent with *Kowal*, which was decided under materially different facts and legal principles."  Pl.'s Mem. at 4.

In short, the singular live question presented by the parties in this second round of briefing is whether *Kowal* compels summary judgment for defendants on Exemption 7(C).  For the reasons explained below, *Kowal* does not go so far.  Plaintiff's motion for summary judgment is thus granted as to the inapplicability of Exemption 7(C) to withhold responsive records, and defendants' motion for reconsideration, intended for a resultant summary judgment in their favor as to invocation of this exemption, is denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The factual background and procedural history relevant to the pending motions are recounted in the previous decision issued in this matter, *see Mid-Atl. Innocence Project*, 2026 WL 775907, at *1-3, and thus only briefly summarized here.

Kenneth G. Copeland was convicted, in 1994, by a jury in Superior Court for the first-degree murder of Wayne Edelin and possession of a firearm during a crime of violence, after a dozen witnesses for the prosecution and one witness for the defense testified at his trial.  *Id.* at *1.  He "was sentenced to an aggregate of thirty-five-years to life imprisonment."  *Id.* at *2.  Both of

his convictions were affirmed on direct appeal, and Copeland's numerous *pro se* petitions for post-conviction relief have all been denied.  *Id.* & n.2.

In December 2022, plaintiff submitted, on Copeland's behalf, a FOIA request to the FBI for "all records pertaining to Kenneth G. Copeland, in the custody and control of the Federal Bureau of Investigation related to the homicide of Wayne Edelin which took place on or around November 28, 1992 near the Barry Farms neighborhood in Southeast DC."  *Id.* at *2 (internal quotation marks omitted) (quoting Compl. ¶ 7, ECF No. 1).  The FBI responded that the "unusual circumstances" presented by the case "will delay its 'ability to make a determination' on the request within the statutory deadline."  *Id.* (quoting Compl. ¶ 11).  At the time of the filing of this lawsuit, on July 20, 2023, the FBI had neither issued a determination nor produced any responsive records, *id.* at *3, but by the time of dispositive briefing, defendants had processed 1,223 pages of responsive records, 173 pages of which were released in full, 609 pages released in part, and 441 pages withheld in full.  *See id.* (citation omitted).  In dispositive briefing, plaintiff disputed withholdings in only 267 pages of these processed documents, 261 of which were released in part and 6 of which were withheld in full.  *See id.* (citation omitted).

Defendants relied on Privacy Act Exemption (j)(2) as well as FOIA Exemptions 3, 6, 7(C), 7(D), and 7(F) to justify the withholding of information from the disputed 267 pages, *id.* at *4, and plaintiff challenged withholdings under each exemption, *id.* at *4-13.  As to Privacy Act Exemption (j)(2), the previous decision concluded that "[t]he bottom line is that the viability of the withholdings under the Privacy Act exemption turns on whether defendants' reliance on" the FOIA exemptions is justified.  *Id.* at *5.[2]  Next, plaintiff persuaded that "FOIA Exemption 3 . . .

---

[2]    The relevant FOIA exemptions are summarized briefly.  Exemption 3 protects from disclosure matters "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3).  Exemption 6 permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) further permits the withholding of "records or

is unavailable to defendants as a basis for withholding information or documents." *Id.* at *7. Similarly, defendants failed "to show that Exemption 7(C) justifies redactions of the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements including by the Assistant U.S. Attorney who prosecuted the case, Special Agent Regini, and other government witnesses under examination." *Id.* at *9. Summary judgment was awarded "to defendants and denied to plaintiff as to Exemption 7(D)," and was "denied to both plaintiff and defendants as to whether Exemption 7(F) was properly asserted." *Id.* at *12-13.

Further, observing that "[t]he *Vaughn* index submitted by defendants lists the exemptions applied to each page withheld in part or in full, but does not clarify whether those exemptions apply to the same or different redactions on the page," "the Court [wa]s unable to specify which Bates-numbered documents may be withheld, due to approval of an exemption, or released, due to disapproval of an exemption." *Id.* at *4. Thus, though defendants' motion for summary judgment was partially granted and partially denied, the parties were instructed that "any document or portion of a document withheld pursuant to Exemption 7(D) may continue to be withheld, regardless of what other exemptions were asserted," *id.* at *12, but further briefing was ordered "for the expeditious resolution of the remaining issues in this matter," *id.* at *1.

---

information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(D) allows withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Finally, Exemption 7(F) permits withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

On June 3, 2026, in compliance with this order, defendants produced a declaration "to clarify whether certain exemptions overlapped." Lara Decl. ¶ 4. The declarant attested that withholdings made under Exemption 7(D) overlapped completely with withholdings made pursuant to Exemptions 3 and 7(F), but overlapped only partially with withholdings made pursuant to Exemptions 6 and 7(C). *Id.* ¶¶ 5-6 ("In every instance in the contested pages where Exemption 3 was applied, Exemption 7(D) was also applied. In every instance in the contested pages where Exemption 7(F) was applied, Exemption 7(D) was also applied. Exemption 7(C) had several instances where it was both used in conjunction with 7(D) and without to withhold names and identifying information, based on the context of the information on the page."). Therefore, ruling on Exemptions 3 and 7(F) would have no practical effect on the withholdings or redactions, so the parties agree that these challenges to the withholdings are moot. *See* Defs.' Mot. at 6 ("Because the Court found that the FBI properly withheld information under Exemption 7(D), no disclosure is required for the withholdings under Exemption 3." (citing *Mid-Atl. Innocence Project*, 2026 WL 775907, at *12)); *id.* ("Because the Court found that the FBI properly withheld information under Exemption 7(D), the Court need not reach the issue of whether the FBI properly applied Exemption 7(F)." (citing *Mid-Atl. Innocence Project*, 2026 WL 775907, at *12)); Pl.'s Mem. at 3 ("Thus, on the present record, the applicability of Exemption 7(F) is moot in light of the Court's holding on Exemption 7(D) . . . ."). Accordingly, only Exemption 7(C) is now contested, with a resultant narrowing of disputed withheld records from 267 pages at issue in the previous decision to 115 pages currently withheld only under contested Exemption 7(C), *see* Lara Decl. ¶ 6.

Both defendants' motion for partial reconsideration and plaintiff's motion for summary judgment focus on the bearing of *Kowal* to the FBI's application of Exemption 7(C) to records responsive to the FOIA request at issue here. *See* Defs.' Mot. at 5 (contending "that *Kowal* [*v.*

6

*United States Department of Justice*, 107 F.4th 1018 (D.C. Cir. 2024)], controls the outcome in this matter"); Pl.'s Mem.  These motions are now ripe for review.  *See* Defs.' Reply in Further Supp. of Partial Mot. for Recons. & Opp'n to Pl.'s Renewed Mot. for Summ. J. ("Defs.' 2d Reply"), ECF No. 46.

## II.     APPLICABLE LEGAL STANDARDS

Set out below are the separate legal standards applicable to the parties' motions for summary judgment and defendants' motion for reconsideration.

### A.     Motion for Summary Judgment

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("A party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law.").  "'The mere existence of some alleged factual dispute between the parties' will not defeat summary judgment; 'the requirement is that there be no genuine issue of material fact.'"  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  Most FOIA cases "can be resolved on summary judgment."  *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 58 F.4th 1255, 1272 (D.C. Cir. 2023) (Sentelle, J., concurring in the judgment) ("[T]he vast majority of FOIA cases can be resolved on summary judgment." (citation omitted)).

 "Agencies may withhold from disclosure information that falls within one of the Act's nine enumerated exceptions," but "[t]hose 'limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'"  *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 712-13 (D.C. Cir. 2025) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352,

361 (1976)).  "This 'strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.'"  *Id.* at 713 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).  "The agencies may carry that burden by submitting declarations attesting to the basis for the agency's decision."  *Am. First Legal Found. v. U.S. Dep't of Agric.*, 126 F.4th 691, 694 (D.C. Cir. 2025) (internal quotation marks omitted) (quoting *Citizens for Resp. & Ethics*, 58 F.4th at 1262).  "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734-35 (D.C. Cir. 2017) (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)).

### B.  Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).  In contrast to a motion for reconsideration pursuant to Rule 59(e), which governs post-judgment motions for reconsideration, "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"  *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.)); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) ("Rule 54(b) . . . not only authorizes the court to enter a partial final judgment but also recognizes its inherent power to reconsider an interlocutory order 'as justice requires.'" (quoting *Greene*, 764 F.2d at 22)).

8

## III.   DISCUSSION

The singular remaining contested issue is whether *Kowal* compels summary judgment for defendants on the FBI's withholding of information, pursuant to FOIA Exemption 7(C).  As noted, *see supra* n.2, this exemption permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  As explained in the previous decision, the FBI "failed to carry its burden to show that Exemption 7(C) justifies redactions of the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements including by the Assistant U.S. Attorney who prosecuted the case, Special Agent Regini, and other government witnesses under examination."  *Mid-Atl. Innocence Project*, 2026 WL 775907, at *9.

Defendants seek reconsideration of this "ruling regarding Exemption 7(C)."  Defs.' Mot. at 2.  To determine whether Exemption 7(C) applies because disclosure would amount to an *unwarranted* personal privacy invasion, courts "weigh the public interest in the release of information against the privacy interest in nondisclosure."  *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (quoting *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003)).  In addition, "[u]nder the FOIA Improvement Act of 2016, [Pub. L. No. 114-185, 130 Stat. 538 (2016),] the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption."  *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

As the D.C. Circuit has explained, and this Court previously recounted, *see Mid-Atl. Innocence Project*, 2026 WL 775907, at *8, "Congress adopted the FOIA Improvement Act in part out of 'concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure,'" *Reps. Comm.*, 3 F.4th at 369 (alteration in original) (quoting S. Rep. No. 114-4, at 2 (2015), *reprinted in* 2016 U.S.C.C.A.N. 321, 322). The Improvement Act thus "requires a 'particularized inquiry into what sort of foreseeable harm would result from the material's release" and "compels an agency to release requested materials unless it can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Hum. Rts. Def. Ctr.*, 126 F.4th at 717 (quoting *Reps. Comm.*, 3 F.4th at 369 & n.2). In effect, Congress added this requirement so that "[a]gencies cannot rely on 'mere "speculative or abstract fears," or fear of embarrassment' to withhold information," nor may they "meet [their] burden with 'generalized assertions.'" *Reps. Comm.*, 3 F.4th at 369 (quoting S. Rep. No. 114-4, at 8, 2016 U.S.C.C.A.N. at 324, and *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). This "foreseeable harm requirement 'impose[s] an independent and meaningful burden on agencies.'" *Reps. Comm.*, 3 F.4th at 369 (alteration in original) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (BAH)).

Previously, plaintiff challenged defendants' redactions to the identities and identifying information of individuals who testified at trial or those "disclosed by the Assistant U.S. Attorney who prosecuted the case, Special Agent Regini, or other government witnesses on direct examination." *Id.* at *8. As already observed in this case, "defendants have an uphill battle to defend redactions of this already public information," and "[t]his hill proves too steep for the justifications proffered under Exemption 7(C)." *Id.* Plaintiff demonstrated that "the public [] has

10

a legitimate and strong interest in ensuring that a lengthy period of incarceration is imposed correctly, not only for a myriad of legal, moral and humane reasons, but also due to the concomitant burdens on the public fisc and resources." *Id.* Defendants' arguments concerning privacy interests was determined to be "entirely speculative, given [that] no evidence is proffered as to why such harassment or retaliation would occur now when the events of the trial occurred more than thirty years ago" and that "defendants acknowledge[d] that they lack awareness of whether these individuals are even still living." *Id.* at *9. Thus, "[b]alancing the public interest against defendants' proffered privacy interests tilt[ed] in favor of releasing the records." *Id.*

As to the foreseeable harm analysis, defendants argued "that 'given the age of Mr. Copeland's criminal case, an official acknowledgment of these third party's association with an FBI investigation is likely to lift that association out of practical obscurity and into the forefront of public awareness, further aggravating the stigma associated with such a disclosure.'" *Id.* (quoting Defs.' Reply in Supp. of Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J. at 5 ("Defs.' 1st Reply"), ECF No. 34). This argument was found to be "upside-down: the fact that these individuals were publicly named in a trial more than three decades ago makes any further reputational risk than that which they may have experienced at the time, highly speculative[, and] [s]uch speculative harm is foreclosed by Congress's creation of the foreseeable harm requirement." *Id.* The previous decision concluded that "[t]he government has thus failed to carry its burden to show that Exemption 7(C) justifies redactions of the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements." *Id.*

Defendants now call attention to "the D.C. Circuit's opinion in *Kowal v. United States Department of Justice*, 107 F.4th 1018 (D.C. Cir. 2024)," Defs.' Mot. at 4, which was quoted once

11

by defendants in the first round of dispositive briefing for the statement that "[w]here there is no identifiable public interest, the privacy interest protected by Exemption 7(C) prevails." Defs.' Mot. for Summ. J. at 11, ECF No. 24 (quoting *Kowal*, 107 F.4th at 1031).[3] Defendants urge that the failure to address defendants' single sentence proposition with citation to, without discussion of, *Kowal*, shows error in the Court's preceding analysis. *See* Defs.' Mot. at 4. Yet defendants' previous briefing did not explain how *Kowal* could overcome defendants' inability to establish foreseeable harm. *See generally id.* Nor does defendants' current briefing explain how a panel of the D.C. Circuit in *Kowal* may eliminate consideration of the statutorily imposed foreseeable harm requirement. *See* Defs.' Mot. at 5; Defs.' 2d Reply at 3 ("The foreseeable harm requirement was codified well before *Kowal*, and yet there were no concerns with the FBI's assertions of harm."). No error occurred because defendants overread *Kowal*.

In *Kowal,* a paralegal in a Federal Public Defender ("FPD") office filed a FOIA request on behalf of the FPD's client, Daniel Troya, who "was sentenced to death for the 'gangland-style' murder of a family of four on a highway roadside." 107 F.4th at 1026; *see also United States v. Troya*, 733 F.3d 1125, 1129-30, 1136 (11th Cir. 2013) (describing Troya as "sentenced to death for the murder of three-year-old Luis Damian Escobedo and four-year-old Luis Julian Escobedo" and "to life imprisonment for the murder of the children's parents, Jose Luis Escobedo and his wife Yessica Escobedo," in the early hours of October 13, 2006). The murders for which Troya was convicted were "committed 'to protect a large-scale drug trafficking ring involving drugs, guns and extensive violence.'" *Kowal*, 107 F.4th at 1026 (quoting *Troya*, 733 F.3d at 1130). The FOIA requests at issue in *Kowal* sought from the FBI, ATF, and Drug Enforcement Administration ("DEA") "all documents, files, records, etc. pertaining to any investigation, arrest, indictment,

---

[3]    Defendants also cited *Kowal* to support the uncontested proposition that "Courts have repeatedly upheld as adequate the FBI's search of the Central Records System." *Id.* at 4 (citing, *inter alia*, *Kowal*, 107 F.4th at 1026).

conviction, sentencing, incarceration, and/or parole of . . . Daniel Troya," *Kowal v. U.S. Dep't of Just.*, 490 F. Supp. 3d 53, 59 (D.D.C. 2020) (TJK) (ellipsis in original), and "also requested the same documents for five of Troya's co-defendants," *Kowal v. U.S. Dep't of Just.*, No. 18-cv-938 (TJK), 2021 WL 3363445, at *1 (D.D.C. Aug. 3, 2021). "The DEA's search identified 418 pages" of responsive materials and "invoked FOIA Exemptions 6, 7(C), 7(D), 7(E), and 7(F) to withhold some documents in whole or in part." *Id.*

When considering the "privacy interests implicated by the withheld material" under Exemptions 6 and 7(C), the district court credited the declaration of a DEA agent, *id.* at *4 (citing Defs.' Mot. for Summ. J., Ex. 1, Decl. of DEA's FOIA/Privacy Act Unit's Unit Chief, Angela D. Hertel ("Hertel Decl.") ¶ 20, *Kowal v. U.S. Dep't of Just.*, No. 18-cv-938 (TJK), ECF No. 36-1), who attested that "[t]he investigative records . . . processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with Mr. Troya, or with a law enforcement investigation, and could subject them to possible harassment, or focus derogatory inferences and suspicion upon them. The individuals are protected from the disclosure of their identities and information about them," Hertel Decl. ¶ 20. The declaration elaborated on the potential harm when discussing Exemption 7(F), attesting that "[i]t has been the experience of DEA that violence is inherent in the drug trade, and the release of the identities of law enforcement officers has resulted in several instances of physical attacks, threats, harassment, murder, and attempted murder. Therefore, the names of the Special Agents as well as other individuals involved in criminal investigations are withheld, since it is reasonable to conclude that identifying them could subject them to harassment, reprisal or physical retaliation for providing information and being connected with the investigation in any way." *Id.* ¶ 43. Consequently, the district court

13

found weighty privacy interests, *see Kowal*, 2021 WL 3363445, at *4, and the D.C. Circuit affirmed, finding that the withholdings were necessary "to prevent 'possible harassment' or 'derogatory inferences and suspicion' against the personnel and witnesses for their involvement in a gang murder investigation" and that "[t]hese explanations are sufficient to demonstrate that the disclosure of the withheld information would threaten privacy interests," *Kowal*, 107 F.4th at 1031.

In its ruling, the D.C. Circuit did not mention foreseeable harm at all, which is unsurprising because appellant never challenged any foreseeable harm analysis conducted by the district court as to application of Exemptions 6 and 7(C), and only briefly mentioned foreseeable harm with respect to Exemption 7(E). *See* Final Br. of Appellant at 46-47, *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018 (D.C. Cir. 2024) (No. 22-5287), 2023 WL 7460796, at *46-47 (complaining, as part of a challenge to the grant of summary judgment for the FBI on Exemption 7(E), that "[t]he district court failed to make specific findings about the foreseeable harm attendant to disclosure, and neither took the age of the records, nor the plethora of information already in the public domain, into account in its ruling"); Final Reply Br. of Appellant at 10-15, *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018 (D.C. Cir. 2024) (No. 22-5287), 2023 WL 7460797, at *10-15 (containing no mention of foreseeable harm at all); *see also* Pl.'s Mem. at 7 ("The court said nothing about FOIA's foreseeable harm requirement or its interaction with Exemption 7(C), presumably because the requester did not raise it."). The D.C. Circuit's elision of any discussion about foreseeable harm does not mean, as defendants contend, that assertions of "'possible harassment' or 'derogatory inferences and suspicion' against the identified individuals," Defs.' 2d Reply at 3 (quoting *Kowal*, 107 F.4th at 1031), are sufficient to satisfy the "meaningful burden" created by the foreseeable harm standard, *Reps. Comm.*, 3 F.4th at 369, especially where, as here, the withholdings concern individuals who either testified at trial or were identified through government-elicited

14

acknowledgements. Thus, after plaintiff argued that the foreseeable harm requirement is "an issue on which *Kowal* offers no guidance because the issue was not presented," Pl.'s Mem. at 8, defendants provided no response other than to say that "[t]he foreseeable harm requirement was codified well before *Kowal*, and yet there were no concerns with the FBI's assertions of harm," Defs.' 2d Reply at 3. To put this bluntly, defendants' position that *Kowal* alters a standard that the parties in that case never pressed and the D.C. Circuit neither expressly considered or held is simply unsupportable and unpersuasive.

Indeed, contrary to the expansive reading of *Kowal* urged by defendants here, the D.C. Circuit itself does not understand *Kowal* to eliminate the foreseeable harm statutory requirement, in circumstances where Exemption 7(C) applies. In *Brown v. Federal Bureau of Investigation*, 143 F.4th 481 (D.C. Cir. 2025), which was decided after, and relied extensively on, *Kowal*—and is joined by *Kowal*'s author—the D.C. Circuit, in affirming the lower court's finding "that the FBI properly invoked Exemptions 6 and 7(C)," analyzed the FBI's explanation of "foreseeable harms three separate groups could experience from disclosure" to determine that "the FBI identified reasonably foreseeable harms linked to the disclosure of the personally identifiable information the FBI withheld," *id.* at 487. Moreover, when an amicus noted "that the district court failed to address foreseeable harm," the D.C. Circuit declined the amicus's invitation to "remand to the district court to evaluate that requirement in the first instance," not because foreseeable harm is no longer necessary but instead because the *de novo* review standard permitted the D.C. Circuit to "affirm a district court judgment on any basis supported by the record." *Id.* at 488 n.5 (quoting *Smith v. Lanier*, 726 F.3d 166, 169 (D.C. Cir. 2013)). Thus, foreseeable harm from a disclosure otherwise subject to a FOIA exemption must still be established after *Kowal*. To the extent defendants urge otherwise, they are incorrect as a matter of law.

15

Moreover, application of the foreseeable harm analysis looks much different in the instant case than in *Kowal*. As a threshold matter, the FOIA request at issue in *Kowal* was broad, seeking "all documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of . . . Daniel Troya," *Kowal*, 490 F. Supp. 3d at 59 (ellipsis in original), compared to the more limited FOIA request here focused on records of those witnesses who testified publicly at trial or were publicly "outed" at trial by a testifying government agent. In other words, the instant dispute does not concern the identities and identifying information of *everyone* involved in the case whose identities might otherwise be unknown, as in *Kowal*, but rather only "the identities and identifying information for individuals who testified at Copeland's trial as well as those who were identified at trial through government-elicited acknowledgements," *Mid-Atl. Innocence Project*, 2026 WL 775907, at *9. In short, the disclosure at issue here pertains to individuals whose involvement in the criminal investigation and trial of Copeland has already been made public, at a public jury trial no less.

Further, the underlying criminal conduct in *Kowal* was on a far different and broader scale than that underlying Copeland's conviction. Troya was involved, fifteen years earlier, in a large conspiracy, had multiple co-defendants, and was a member of "a large-scale drug trafficking ring involving drugs, guns and extensive violence.'" *Kowal*, 107 F.4th at 1026. In contrast, Copeland was charged, alone, with no co-defendants or allegation of a larger conspiracy, of committing a single murder more than thirty years ago. Though defendants present an allegation of "the alleged ties Mr. Copeland has to drug-gang activity," Defs.' 1st Reply, Ex. 2, Third Hammer Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., Fed. Bureau of Investigations, Shannon R. Hammer ¶ 18, ECF No. 34-2, nowhere in the record before this Court is that allegation connected to the murder for which Copeland was convicted.

16

Furthermore, the declaration on which defendants rely in this case, *see* Defs.' Mot. at 4 (citing Defs.' Mot. for Summ. J., Decl. of Acting Section Chief of the Rec./Info. Dissemination Section, Info. Mgmt. Div., Fed. Bureau of Investigation, Shannon R. Hammer ("FBI's Hammer Decl."), ECF No. 24-1), contains merely speculative notions of potential harm. For instance, regarding the application of Exemption 7 (C) to withhold the identities and identifying information of FBI special agents, the declaration states that "Plaintiff was sentenced to thirty-five years to life for the murder of Wayne Edelin" and that "[t]his individual may seek revenge on SAs [Special Agents], and other federal employees involved in a particular investigation." *Id.* ¶ 39. The declaration never explains, and the briefing does not make clear, the "incremental privacy harm" that would arise with disclosure of the names of special agents who were witnesses at the trial or were identified at trial through government-elicited acknowledgement when Copeland was sitting at trial and therefore knows the identities of these special agents or, if he forgot the witnesses' names over the intervening three decades, could readily obtain a trial transcript "from the D.C. Court of Appeals in less than one month, free of charge." *Mid-Atl. Innocence Project*, 2026 WL 775907, at *8 (quoting Pl.'s Mot. for Summ. J., Pl.'s Mem. in Supp. at 13-14, ECF No. 27-1).

The declaration is no more persuasive in its description of foreseeable harm to third parties. Beginning with the attestation that "[d]isclosure of the identities of individuals who willingly provide information to the FBI could subject these individuals to harassment or embarrassment, undue public attention, and/or unwanted inquiries for information related to their assistance," the declarant expresses that "the FBI does not want to further disrupt the lives of those individuals and bring undo attention" because "[t]hey could also be targeted for retaliation by investigative subjects or by those who simply disparage cooperation with law enforcement." FBI's Hammer Decl. ¶ 41. The attestation continues that "[c]onsidering the subjects well-known propensity of

17

violence in the community, even today, the disclosure of the identities or identifying information of any third party's cooperation with law enforcement could also lead to legal or economic detriment, negative professional and social repercussions, possible physical harm, or even death." *Id.* The flaws in this justification for finding foreseeable harm are multifaceted. First, the declaration never indicates that other individuals were either involved with or investigated for the murder of Wayne Edelin, so the declaration is unclear, and thus unpersuasive, as to whether other individuals were targets of the investigation or whether the declaration is merely addressing possible, speculative harms. Second, the concerns expressed about the disclosure of third parties' cooperation with law enforcement is misplaced since the FOIA request at issue is narrowly focused on individuals already publicly disclosed as either testifying witnesses or by a testifying government agent witness. Third, the concern that disclosure could somehow "lead to legal or economic detriment," *id.*, seems implausible and, without more explanation, suggests that the stated harms merely represent possible detrimental outcomes that could potentially arise from cooperating with law enforcement in general. The use of "speculative or abstract fears" and "generalized assertions" are insufficient to meet the foreseeable harm requirement. *Reps. Comm.*, 3 F.4th at 369.

Indeed, the declaration is so imprecise as to foreseeable harm that "defendants acknowledge[d] that they lack awareness of whether these individuals are even still living, *Mid-Atl. Innocence Project*, 2026 WL 775907, at *9 (citing Defs.' 1st Reply at 7), a consideration of heightened importance where the underlying events occurred more than thirty years ago.[4]

---

[4] As *Kowal* proves too thin a reed upon which defendants can support an argument that they have established foreseeable harm, defendants have not shown that withholding the documents is appropriate, rendering their argument for reconsideration of the balancing of the public interest against the privacy interests non-dispositive. Accordingly, defendants' assertion that *Kowal* controls the analysis of cognizable public interest, *see* Pl.'s Mem. at 5, as well as plaintiff's response that *Citizens for Responsibility & Ethics in Washington v. Department of Justice*, 854 F.3d 675 (D.C. Cir. 2017), a decision never raised by the parties in the first round of dispositive briefing and thus not addressed in the prior decision, controls this analysis, *see* Pl.'s Mem. at 9-10, need not be reached.

18

With the determination that *Kowal*, on either its facts or as a matter of law, does not alter the reasoning of the previous decision regarding Exemptions 6 and 7(C), and upon consideration of defendants' supplemental declaration disentangling overlapping withholdings, plaintiff is thus entitled to summary judgment as to the redactions and withholdings applied under Exemptions 6 and 7(C). Accordingly, defendants must produce to plaintiff the unredacted version of the disputed responsive records where redactions and withholdings were made pursuant to Exemptions 6 and 7(C), but not those where redactions and withholdings were also made in tandem with Exemption 7(D).[5] At defendants' request, *see* Defs.' Mot. at 7-8, and without objection from plaintiff, *see* Pl.'s Mem. at 10, the production required by the Order effectuating the conclusions in this Memorandum Opinion will be stayed for sixty days until September 18, 2026, to allow defendants time to consider filing an appeal and, absent defendants' filing of an appeal, defendants will be directed to produce the responsive records withheld only under Exemptions 6 and 7(C), within thirty days after lapse of the stay, or by October 19, 2026.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration of denial of summary judgment as to defendants' withholding of responsive records, under FOIA Exemptions 6 and 7(C), is denied, and plaintiff's motion for summary judgment is granted as to those withheld records, which must be disclosed. In accordance with defendants' unopposed request, the production ordered due to denial of defendants' withholdings under FOIA Exemptions 6 and 7(C), will be stayed for sixty days, until September 18, 2026, and, absent any appeal filed by defendants,

---

[5]    Defendants applied Exemptions 6 and 7(C) separately from Exemption 7(D), to portions of the following Bates-stamp numbered documents: 16-21, 23, 33-37, 40, 42, 44-46, 60-61, 63-65, 74, 85, 86, 89, 141, 143, 148, 190, 192-93, 232, 238, 243, 253, 260, 262, 278, 283-84, 329-30, 343-44, 427-28, 452-54, 503-04, 506-07, 521, 523-24, 531-32, 534, 537-38, 543, 567, 573-74, 691-96, 698, 702, 704-05, 708-10, 712, 716, 722, 727, 739, 754, 772, 794-95, 800-06, 808, 815, 826-27, 832, 848, 857-59, 861, 863-64, 882, 887-90, 945, 948-49. *See* Lara Decl. ¶ 6.

19

the records at issue shall be disclosed within thirty days of the lapse of this stay, or by October 19, 2026.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  July 20, 2026

                                          _____

                                          **BERYL A. HOWELL**
                                          United States District Judge